UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ELIZABETH A. RICHTER,
　　　*Plaintiff*,
　　　　*v.*
THE CONNECTICUT JUDICIAL BRANCH, *et al.*,
　　　*Defendants*.

Civil No. 3:12cv1638 (JBA)

March 27, 2014

## RULING GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff, Elizabeth A. Richter, filed an Amended Complaint [Doc. # 35] against the Connecticut Judicial Branch (the "Judicial Branch"), Judge Herbert Barall of the Superior Court (collectively the "State Defendants" or "State"), and a law firm that formerly represented her, O'Connell, Attmore, and Morris, LLC ("OAM"), alleging violations of her rights under the Americans With Disabilities Act ("ADA"), 42 U.S.C. 12131, *et seq.,* § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Due Process Clause of the Fourteenth Amendment, arising from her state court divorce and child-custody proceedings. Plaintiff claims (1) violations of her Fourteenth Amendment Due Process rights, Title II of the ADA and retaliation in violation of the ADA by the Judicial Branch (Count One) and Judge Barall in his individual and official capacity (Count Four), and violation of Title III of the ADA and retaliation in violation of the ADA by OAM (Count Three); (2) violation of the Rehabilitation Act by the Judicial Branch (Count Two); (3) intentional infliction of emotional distress by the Judicial Branch (Count Five), OAM (Count Six), and Judge Barall (Count Seven).

OAM moves [Doc. # 38] to dismiss the Amended Complaint for lack of standing and failure to state a claim, and the State Defendants move [Doc. # 45] to dismiss on the

basis that the relief sought is barred by the Eleventh Amendment; judicial immunity; the *Rooker-Feldman* doctrine; and failure to state a claim for relief.  Plaintiff moves [Doc. # 50] to strike the State's memorandum in support and a number of its exhibits.  For the reasons that follow, Defendants' motions are granted, and Plaintiff's motion is denied.

## I.      Facts Described in the Amended Complaint

Plaintiff filed for divorce in July 2006 in Connecticut Superior Court, and during the course of litigation her then-husband raised her "psychotic illness," based on events thirty years earlier, when she had been "misdiagnosed" and improperly hospitalized. (Am. Compl. ¶¶ 18–19.)  As a result, the Judicial Branch "has perceived the Plaintiff as having a psychiatric illness that she does not have."  (*Id.* ¶ 21.)  In addition, Plaintiff alleges that this discrimination on the basis of perceived disability has led to her developing "stress and anxiety" and "Legal Abuse Syndrome, a form of PTSD."  (*Id.* ¶ 22.) Plaintiff developed these conditions "as a result of discrimination that [Richter] has experienced and continues to experience as a result of this misdiagnosis."  (*Id.*)

Despite Richter's perceived and actual disabilities, during her divorce proceedings, "the Superior Court failed to inform her of her rights and protections under the ADA and proceeded to deny her access to those rights and protections from July 2006 up until December 2012."  (*Id.* ¶ 25.)  Due to her perceived disability, Richter "was denied the services of the trial court such as family relations, mediation, special masters, etc. and denied meaningful participation in pretrial hearings and trial court hearings."  (*Id.* ¶ 35.) Richter alleges that she was "subjected to harassment and coercion in the form of long and drawn out proceedings" (*id.* ¶ 36), and "the Trial Court allowed a hostile atmosphere

to dominate court proceedings . . . and consistently addressed her in a rude and hostile manner" (*id.* ¶ 40).

From September 2009 through December 2009, Richter made numerous verbal requests for "accommodation and protection from discrimination under the ADA" and filed motions "For a Referral to the ADA Coordinator" and for "Relief from ADA violations," but these requests and motions were ignored. (*See id.* ¶¶ 44–47.) On March 8, 2010, Richter filed a Request For Accommodation by Persons With Disabilities Form to the Judicial Branch, requesting "protection from discrimination based upon the perception that she has a mental illness," and "accommodations for the anxiety symptoms she experiences" as a result of this unwarranted perception. (*Id.* ¶ 49; *see also* Request for Accommodation Form, Ex. 8 to Defs.' Mot. to Dismiss.)

On March 19, 2010, Richter provided documentation from her psychiatrist, who recommended that the trial court allow Richter (1) "an assistant to review and clarify what has been said in court," (2) the opportunity "to take brief breaks," (3) "any other accommodations the ADA Coordinator might suggest," and (4) to "[c]onsult with a stigma expert regarding discrimination." (*Id.* ¶ 50.) On June 14, 2010, Richter's requests were denied. (*Id.* ¶ 51.) Richter submitted another request on August 19, 2010, which was also denied. (*Id.* ¶¶ 56–57.) On September 20, 2010, Richter filed a grievance appealing the denial of her requested accommodations. (*Id.* ¶ 59.) On November 9, 2010, Richter received a reply from the Grievance Committee, stating that the Judicial Branch was complying with her requests for accommodations, and had allowed Richter to be assisted "by an individual of your choice during hearings," but there was no record that Richter had done so. (*Id.* ¶ 62.) Richter responded that because "the hostility

directed towards me in court is so great as a consequence of a discriminatory attitude, then that makes it difficult for me to even ask for such an accommodation[]," and that during a hearing before the trial court in August 2010 "she was denied a break even though she repeatedly requested one" and "even though her ADA Coach was allowed to sit next to the Plaintiff, he was not allowed to speak to her and explain what was being said as the Plaintiff had requested as part of her reasonable accommodations." (*Id.* ¶ 63.)

In a September 16, 2010 ruling, Judge Barall ruled against Richter and based his decision in part on a "custody evaluation," which "was hearsay, was considerably inaccurate, was not relevant to the issues before the trial court," and in doing so Judge Barall committed "an act of discrimination . . . based upon the perception of [Richter] as having a mental health disability she does not have." (*Id.* ¶ 72). Judge Barall's ruling referred to Richter's ADA coach as her "sexual partner," which was "an attempt to retaliate against the Plaintiff's ADA coach because of his support of the Plaintiff." (*Id.* ¶ 70.) In subsequent proceedings before Judge Barall, Richter "became temporarily disabled and entitled to reasonable accommodations . . . since she required surgery," and repeatedly requested a delay in hearings regarding a motion for attorney's fees, but Judge Barall "continued on to rule on Attorney's Fees without allowing her to have a hearing to which she is entitled under the 5th and 14th amendments to the constitution" and "documents were concealed." (*Id.* ¶ 73.)

During her appeal of multiple trial court orders,[1] Richter submitted requests for accommodation to the Appellate Court of Connecticut "asking for ADA protection against discrimination" in her appellate cases, but these requests were denied. (*Id.* ¶¶ 77–81.) The Appellate Court "then continued on to rule against the Plaintiff . . . without actually considering the issues raised on appeal, and in doing so clearly discriminating against the Plaintiff as a person with a disability." (*Id.* ¶ 81b.)

On December 7, 2012, before Plaintiff filed her Complaint with this Court, a Superior Court judge confirmed Plaintiff's "eligibility for ADA Accommodations and also approved all of the Plaintiff's requested accommodations." (*Id.* ¶ 82.) Shortly, thereafter Richter received additional confirmation of her eligibility for ADA accommodations, and the Judicial Branch "approved all of the Plaintiff's requested accommodations," which were "the very same accommodations that the Plaintiff was asking for in 2009." (*Id.* ¶ 82.)

---

[1] Plaintiff appealed both the award of attorneys' fees and her claim that Judge Barall improperly deprived her of a hearing before making such an award. The Appellate Court of Connecticut affirmed the award of attorneys' fees for litigation misconduct based on the trial court's determination that Plaintiff caused the court's docket to be "'peppered with'" excessive and unwarranted "'motions and uninvited memoranda.'" In addition, [Judge Barall] found that the plaintiff had caused 'substantive legal costs to the defendant by filing false claims' and that she had filed the present case in order to 'get even with a person she believed was her enemy.'" *Richter v. Richter*, 137 Conn. App. 231, 233 (2012). The Appellate Court also concluded that Plaintiff had not been deprived of the opportunity to participate in a hearing, because the trial court twice continued the hearing due to Plaintiff's illness and finally scheduled a telephonic hearing in which Plaintiff did not participate despite a court order to do so. *Id.* at 237. The trial court also provided Plaintiff with an opportunity to submit written opposition. *Id.* at 237.

Although the Judicial Branch has now agreed to provide Richter with the requested accommodations, court personnel had previously been "deliberately attempting to mislead the Plaintiff in regard to her rights." (*Id.* ¶ 83.) As a result, Richter "never received consistent, valid, or meaningful accommodations for her disability both in superior court and appellate court, and was thus deprived of both testamentary and participatory access to these courts." (*Id.* ¶ 85.) The rulings from the Superior Court and Appellate Court were "clearly discriminatory," such as a September 30, 2010 ruling that was "a gossipy rambling account of the case full of misleading and false information." (*Id.* ¶ 86.)

Richter also asserts claims against OAM, which formerly represented her in the divorce proceedings. In a April 2007 meeting with attorney James T. Flaherty, Richter "specifically reviewed the mental health issues in her case," but "Attorney Flaherty failed [to] provide any information regarding reasonable accommodation, and he failed to offer any reasonable accommodations which would have allowed her to obtain equal access to the services that he and his legal firm provides." (*Id.* ¶ 28.) Such reasonable accommodations would have included "additional time to hear, process, and respond to proposals that were brought before her for approval," but instead attorneys "insisted that if the Plaintiff did not act immediately, they would withdraw from her case." (*Id.* ¶ 29.) This "bullying and threatening . . . was a violation of the ADA prohibition against retaliation." (*Id.* ¶ 30.) On September 5, 2007 during a hearing on the firm's motion to withdraw from its representation, "Flaherty specifically attributed his decision to withdraw upon the plaintiff's mental health condition," but "there is no indication that at any time during the firms' representation of the plaintiff that he or any other member of

the attorney firm offered any reasonable accommodations to . . . ensure effective communication with the Plaintiff or in order to ensure that their services were accessible to the Plaintiff." (*Id.* ¶ 32.)

Richter seeks (1) a judgment declaring that the Judicial Branch and OAM have violated the ADA; (2) an injunction prohibiting the Judicial Branch from discriminating on the basis of disability and requiring compliance with the ADA; (3) an order that the Judicial Branch provide its services to persons with disabilities in "a nondiscriminatory manner, including using a broader and more inclusive basis for making decisions on whether an individual is a qualified individual under the ADA;" (4) an order that OAM conduct its business in a manner to make its services accessible to all people with both visible and invisible disabilities; (5) an order that the Judicial Branch, Judge Barall, and members of OAM undergo training in ADA requirements; (6) an order the Judicial Branch and its personnel "cease interfering in the work of" and retaliating against "an ADA Advocate;" (7) an order providing that "all judgments in the lawsuits" involving Richter "be overturned and new trials ordered in which the Plaintiff's ADA" and constitutional rights "are protected;" and (8) compensatory and punitive damages and attorney's fees. (*Id.* at 40–41.)

## II.    Discussion

Defendants move to dismiss the Amended Complaint in its entirety, on the grounds that the Court lacks subject matter jurisdiction under Fed. R. Civ. P 12(b)(1)[2] and that Plaintiff has failed to state a claim for which relief can be granted under Rule 12(b)(6).[3]

### A.    Sovereign Immunity

The Judicial Branch contends that the Court lacks subject matter jurisdiction over Richter's claims against it, because they are barred by sovereign immunity.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

---

[2] "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* In resolving a motion to dismiss for lack of subject matter jurisdiction, the court may refer to evidence outside the pleadings. *Id.*

[3] To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). Detailed allegations are not required but a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (alterations in original).

U.S. Const. amend. XI.  "'Although the text of the Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts,' it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court."  *In re Charter Oak Associates*, 361 F.3d 760, 765 (2d Cir. 2004) (quoting *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996)).  Although the State of Connecticut is not itself named as a defendant, "[t]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to 'state agents and state instrumentalities' that are, effectively, arms of a state," *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.,* 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 429 (1997)), including state courts, *see Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 414 (2d Cir. 1999) ("The State Office of Court Administration is an arm of the state and therefore immune."); *Daigneault v. State of Conn. Judicial Branch*, No. 3:07cv122 (JCH), 2007 WL 869028, at *2 (D. Conn. Mar. 19, 2007) *aff'd sub nom. Daigneault v. Judicial Branch, Connecticut*, 309 F. App'x 518 (2d Cir. 2009) ("The Judicial Branch is a department of the State of Connecticut.").

Under § 5 of the Fourteenth Amendment, however, Congress may abrogate the State's Eleventh Amendment immunity, *Tennessee v. Lane*, 541 U.S. 509, 517 (2004), and has done so for claims brought under Title II of the ADA, *see* 42 U.S.C. § 12202.  In *Lane*, the Supreme Court upheld Congress' abrogation of sovereign immunity to enforce the fundamental right of access to the courts brought in a suit by two "paraplegics who use wheelchairs for mobility" and were not able to gain physical access to several courtrooms. 541 U.S. at 513.  The Supreme Court concluded that "Congress had the power under § 5 to enforce the constitutional right of access to the courts," and thus "Title II

unquestionably is valid § 5 legislation as it applies to the class of cases implicating the accessibility of judicial services." *Id.* at 531.  The Supreme Court emphasized:

> The remedy Congress chose is nevertheless a limited one.  Recognizing that failure to accommodate persons with disabilities will often have the same practical effect as outright exclusion, Congress required the States to take reasonable measures to remove architectural and other barriers to accessibility.  But Title II does not require States to employ any and all means to make judicial services accessible to persons with disabilities, and it does not require States to compromise their essential eligibility criteria for public programs. It requires only "reasonable modifications" that would not fundamentally alter the nature of the service provided, and only when the individual seeking modification is otherwise eligible for the service.

*Id.* at 531–32.

In *United States v. Georgia,* 546 U.S. 151, 159 (2006), the Supreme Court noted the disagreement among members of the Court "regarding the scope of Congress's 'prophylactic' enforcement powers under § 5 of the Fourteenth Amendment" and held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."  The Supreme Court did not address the issue of whether Title II validly abrogates state sovereign immunity for conduct that violates Title II but does not violate the Fourteenth Amendment, and instructed lower courts to consider

> on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Id.* at 159.  The Supreme "Court expressly left open the possibility that misconduct that does not violate a fundamental right protected by the Fourteenth Amendment could nevertheless violate Title II and lead to a valid private cause of action for money damages against a state." *Olson v. State of New York*, No. 2:04cv00419 (ENV) (MLO), 2007 WL 1029021, at *7 (E.D.N.Y. Mar. 30, 2007).  But under this analysis, "if a plaintiff cannot state a Title II claim, the court's sovereign immunity inquiry is at an end," and the claim is dismissed for failure to state a Title II violation.  *Mary Jo C. v. New York State & Local Ret. Sys.*, 707 F.3d 144, 152 (2d Cir. 2013).

Because Plaintiff's claims implicate her right of access to the courts, the Court will examine whether Plaintiff has stated a claim for relief under the ADA, and if so, whether the State is nevertheless immune from liability.  *See Badillo-Santiago v. Naveira-Merly*, 378 F.3d 1, 6 (1st Cir. 2004) ("Here, at least one of Badillo's federal claims implicates his right of access to the courts and thus falls within the holding of *Lane,* and so is not barred by the Eleventh Amendment.  That is his claim that during his trial he was denied due process because there was no reasonable accommodation of his hearing impairment.").

## B.   Discrimination on the Basis of Actual Disability

### 1.   Failure to State a Claim

The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Lane,* 541 U.S. at 516–17.  "In order to establish a violation under the ADA, [] plaintiffs must demonstrate that (1) they are 'qualified individuals' with a disability; (2) that the defendants are subject to the ADA; and (3) that

11

plaintiffs were denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or were otherwise discriminated against by defendants, by reason of plaintiffs' disabilities." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).[4]  The Judicial Branch does not dispute that it is generally subject to the ADA with the limitations imposed by sovereign immunity.

Courts apply a three-part test to determine whether a plaintiff has a disability covered by the ADA.  *See Colwell v. Suffolk County Police Dep't,* 158 F.3d 635, 641 (2d Cir. 1998).  First, the plaintiff must show the presence of a "mental or physical impairment." Second, the plaintiff must show that the impairment affects a "major life activity."  Third, the plaintiff must show that the impairment "substantially limits" that major life activity. *Stalter v. Bd. of Co-op. Educ. Servs. of Rockland Cnty.*, 235 F. Supp. 2d 323, 329 (S.D.N.Y. 2002).

Although the ADA does not define the term "impairment," the EEOC has issued administrative regulations implementing the ADA, which define a "mental impairment" as "[a]ny mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."  29 C.F.R. § 1630.2(h).  "Under the law of this Circuit, the EEOC's regulations are entitled to 'great deference' in interpreting the ADA."  *Muller v. Costello*, 187 F.3d 298, 312 (2d Cir. 1999).

Plaintiff alleges that she currently suffers from "stress and anxiety" and "Legal Abuse Syndrome, a form of PTSD."  (Am. Compl. ¶ 22.)  "[S]tress and depression are

---

[4] "Since the standards adopted by Titles II and III of the ADA are, in most cases, the same as those required under the Rehabilitation Act, we consider the merits of these claims together."  *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (internal citations omitted).

conditions that may or may not be considered impairments, depending on whether these conditions result from a documented physiological or mental disorder." *Santos v. City of New York,* No. 01cv0120 (SAS), 2001 WL 1568813, *4 (S.D.N.Y. Dec. 7, 2001) (internal quotation marks omitted); *see also Reilly v. Revlon, Inc.,* 620 F. Supp. 2d 524, 539 (S.D.N.Y. 2009) (finding that depression may qualify as a disability for purposes of the ADA, "provided that the condition is not a 'temporary psychological impairment.'"). Although Plaintiff has not alleged specific facts which show that her conditions rise to the level of a mental impairment within the meaning of the ADA, the Court will assume for its analysis of the pending motions that she has satisfied this pleading burden. *See Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 400–01 (S.D.N.Y. 2011).

Next, courts will consider the life activity upon which the plaintiff relies and whether it constitutes a major life activity. *See Bragdon v. Abbott,* 524 U.S. 624, 632 (1998). Plaintiff does not specifically identify any major life activities that are substantially limited by her impairment, but construing her pro se complaint liberally and looking to the accommodations that Plaintiff alleges were denied to her, such as having an assistant with her in court and the ability to take brief breaks (*see* Am. Compl. ¶ 50), the Amended Complaint suggests that as a result of her stress and anxiety, Richter had difficulty comprehending and participating in court proceedings. Thus, her complaint plausibly alleges a limitation on her ability to concentrate and communicate, which are major life activities as defined by EEOC regulations. *See* 29 CFR § 1630.2(i)(1)(i).

Finally, in determining whether a plaintiff suffers from a disability within the meaning of the ADA, courts will look to whether the plaintiff has pled facts tending to show that the impairment substantially limits the major life activity. According to the

13

EEOC regulations, "substantially limit[ed]" means a person is "[u]nable to perform a major life activity that the average person in the general population can perform'" or is "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. 1630.2(j).

"To assess whether an impairment is substantially limiting, courts in this Circuit typically look to three factors: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long-term impact resulting from the impairment."  *Stalter v. Bd. of Co-op. Educ. Servs. of Rockland Cnty.*, 235 F. Supp. 2d 323, 329–30 (S.D.N.Y. 2002).  "To establish a disability under the ADA, there must be some proof of permanency," i.e. "the limitation of the claimed major life activity cannot be temporary.  *Green v. New York City Health & Hosp. Corp.*, No. 04 cv5144 (PAC), 2008 WL 144828, at *4 (S.D.N.Y. Jan. 15, 2008) (citing *Adams v. Citizens Advice Bureau,* 187 F.3d 315, 316–17 (2d Cir. 1999)).

The gravamen of the Amended Complaint is that Richter was regularly discriminated against on the basis of a perceived, not actual, disability, and thereafter, as a result of her perceived disability and the ensuing discrimination, she developed an actual disability, which was not reasonably accommodated.  But even construing the Amended Complaint liberally, it plausibly claims only that Richter's actual disability was a temporary result of the anxiety caused by the judicial proceedings, and not an ailment that would continue permanently even after those proceedings were completed or an intermittent condition resulting from past discrimination by non-parties.  (*See* Am.

Compl. ¶ 22 ("[*A*]*s a result of discrimination* that [Richter] has experienced and continues to experience . . . [she] has developed stress and anxiety for which she has received counseling on and off over the years.  Further, the Plaintiff has developed Legal Abuse Syndrome, a form of PTSD *as a result of the discrimination* which she has endured in the hands of the Defendants." (emphasis added).)   Accordingly, because Plaintiff has not plausibly claimed an ADA-covered disability, her allegations for discrimination under the ADA on the basis of actual disability must be dismissed.

### C.   Discrimination on the Basis of Perceived Disability

In addition to protecting individuals against discrimination on the basis of actual disabilities, the ADA protects an individual who is perceived to be disabled within the meaning of the ADA, *Giordano v. City of New York*, 274 F.3d 740, 748 (2d Cir. 2001), "whether or not the impairment limits or is perceived to limit a major life activity" 42 U.S.C. § 12102(3)(A); *see also* 29 C.F.R. § 1630.2(l)(1).

Plaintiff alleges that a result of the fact that she "was perceived of as disabled, she was denied the services of the trial court such as family relations, mediation, special masters, etc. and denied meaningful participation in pre-trial hearings, and trial court hearings" (Am. Compl. ¶ 35), and that as a result "[t]he rulings in this case from the Superior Court as well as Appellate Court are clearly discriminatory" (*id.* ¶ 86).  Plaintiff alleges that her perceived disabilities resulted in discrimination in state court judicial proceedings with results adverse to her.

#### 1.   *Rooker-Feldman*

Defendants maintain that the Amended Complaint must be dismissed under the *Rooker-Feldman* doctrine.  "*Rooker–Feldman* directs federal courts to abstain from

considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir. 2010). The doctrine also "prohibits federal courts from considering claims that are 'inextricably intertwined' with prior state court determinations." *Babalola v. B.Y. Equities, Inc.*, 63 F. App'x 534, 535 (2d Cir. 2003).

Here, the requirements for *Rooker-Feldman* are unmistakably satisfied.  First, Plaintiff claims she lost numerous rulings and judgments entered in state court.  Second, she alleges that those judgments were the result of discrimination under the ADA and have caused her injury.  Third, she requests this Court to review and overturn those decisions.  Fourth, the challenged court proceedings terminated well before the filing of this suit.  *See Watley v. Keller*, 3:13cv1858 (RNC), 2013 WL 6842743, at *2 (D. Conn. Dec. 27, 2013) ("Plaintiffs' claims against the Judicial Branch and Judge Keller directly challenge state court decisions that certain services available under the ADA did not have to be provided to the plaintiffs during the course of their termination proceedings.").[5]

---

[5] Additionally, Plaintiff filed an appeal to the Appellate Court, asserting that a number of the same Superior Court actions that also form the basis for her ADA allegations in the Amended Complaint violated due process. *See, e.g., Richter*, 137 Conn. App. at 233.  Plaintiff cannot assert claims that she has already litigated in state court due to issue preclusion.  A party is barred by issue preclusion from "relitigating an issue if a four-part test is met: (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir. 1998).  Plaintiff's only due process allegation in the Amended

### D.      Retaliation

Plaintiff alleges that since November 16, 2012, when she filed [Doc. # 1] the Complaint in this action, "the Connecticut Judicial Branch has retaliated against the Plaintiff and she has been subjected to interference and harassment in her role as an ADA Advocate in support of litigants with disabilities."  (Am. Compl. at 4.)   Additonally, Plaintiff alleges that Judge Barall referred to her ADA coach as her "sexual partner" in a ruling (*id.* ¶ 70); employees of the Judicial Branch interfered with the work of her ADA coach (*id.* ¶ 96(g)); and that the denial of her ADA requests constituted retaliation (*id.* ¶¶ 87(a)).

"We apply the *McDonnell Douglas* burden-shifting rules to claims of retaliation pursuant to" the ADA and Rehabilitation Act.  *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 54 (2d Cir. 2002).   Plaintiff therefore must first establish a prima facie case of retaliation, showing that she was "[1] engaged in protected activity, [2] that [Defendants were] aware of this activity, [3] that [they] took adverse action against the plaintiff, and [4] a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse . . . action." *Id.* (internal citations and quotation marks omitted).   Although Plaintiff's filing of this

---

Complaint concerns her allegation that she was denied a hearing before the Superior Court awarded attorneys' fees.  (Am. Compl. ¶ 73.)  Plaintiff already appealed this exact issue to the Appellate Court, *see Richter*, 137 Conn. App. at 237, and is precluded from litigating this same issue before this Court.  *See Boguslavsky,* 159 F.3d at 720.  To the extent that Plaintiff seeks to litigate due process claims that she did not raise in state court, such claims would necessarily implicate this Court's reassessment (and rejection) of the state court judgments and are thus similarly unsuitable for review under *Rooker-Feldman.  See Watley*, 2013 WL 6842743, at *2 n.2.

action is a protected activity, Plaintiff has not pled any facts to plausibly allege that Defendants were aware of this action.  Further, Plaintiff has not alleged adverse action beyond the denial of the ADA accommodations that are also the subject of the failure to accommodate claims.  *Cf. id.* ("RECAP alleges that the defendants retaliated against it for threatening to complain and actually complaining about the denial of the permit by withdrawing funds committed to it by the City for a different project.").  To the extent that the same facts that underlie Plaintiff's failure to accommodate claim also constitute her retaliation claim, she has not pled any non-conclusory facts that plausibly suggest that Defendants denied her benefits in retaliation for her filing of this action or otherwise acted with a retaliatory motive.  *See Twombly*, 550 U.S. at 555.  Accordingly, Plaintiff's retaliation claims under the ADA and Rehabilitation Act are dismissed.

### E.      Judicial Immunity of Judge Barall

Defendants seek dismissal of Plaintiff's claims against Judge Barall on the basis of judicial immunity.  It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions.  *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir. 2009).  The purpose of absolute immunity is to protect "the independent and impartial exercise of judgment vital to the judiciary [which] might be impaired by exposure to potential damages liability."  *Antoine v. Byers & Anderson, Inc.,* 508 U.S. 429, 435 (1993).  This species of immunity "is an immunity from suit, not just from ultimate assessment of damages."  *Mireles v. Waco,* 502 U.S. 9, 11 (1991).  Thus, it "operates to shield judges acting in their official capacity," *DiPasquale v. Milin,* 303 F. Supp. 2d 430, 431 (S.D.N.Y. 2004), and bars "claims against [judicial] defendants in their individual capacities," *Abrahams v. Appellate Div. of the Supreme Court,* 473 F. Supp. 2d 550, 557

18

(S.D.N.Y. 2007).  "The cloak of immunity is not pierced by allegations of bad faith or malice, even though 'unfairness and injustice to a litigant may result on occasion.'" *Tucker v. Outwater*, 118 F.3d 930, 932 (2d Cir. 1997) (quoting *Mireles,* 502 U.S. at 9) (internal citations omitted).

Absolute judicial immunity has two limitations.  First, a judge is not immune from liability for "nonjudicial actions, i.e., actions not taken in the judge's judicial capacity."  *Mireles,* 502 U.S. at 11.  Second, a judge is not immune for actions, though judicial in nature, "taken in the complete absence of all jurisdiction."  *Id.*

Even though Plaintiff distinguishes between Judge Barall's actions taken "in a purely [a]dministrative, non-judicial capacity" (Am. Compl. ¶ 111), the basis for her allegations is Judge Barall's conduct in presiding over the divorce proceedings.  The determination of "whether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978).

A judge's control of ongoing proceedings and managing the court's docket is at the heart of the judicial function, and thus Plaintiff's claims against Judge Barall must be dismissed based on judicial immunity.  *See Huminski v. Corsones*, 396 F.3d 53, 76 (2d Cir. 2005) ("A court's control of its docket is also a judicial act because it 'is part of [a court's] function of resolving disputes between parties.'" (quoting *Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir. 1997) (alterations in original)); *see also Goldblatt v. Doerty*, 503 F. App'x 537 (9th Cir. 2013) ("The district court properly dismissed Goldblatt's claims regarding defendant's alleged denial of ADA accommodations because they arose out of defendant's

rulings in his capacity as a judge presiding over a state court family law proceeding, and,

therefore, were barred by absolute judicial immunity.").[6]

Additionally, Plaintiff's claims for injunctive relief against Judge Barall are barred

by 42 U.S.C. § 1983, which provides that "in any action brought against a judicial officer

for an act or omission taken in such officer's judicial capacity, injunctive relief shall not

be granted unless a declaratory decree was violated or declaratory relief was unavailable."

42 U.S.C. § 1983; *see also Huminski v. Corsones,* 396 F.3d 53, 74 (2d Cir. 2005).  Plaintiff

has not alleged that a declaratory decree was violated or that declaratory relief was

unavailable, and thus § 1983 bars Plaintiff's claims for injunctive relief.

**F.      OAM**

OAM maintains that Plaintiff's claims against it fail for numerous reasons.  First,

it asserts that the ADA claims are barred under the statute of limitations.   The

discriminatory conduct that Plaintiff alleges with regard to OAM occurred in April 2007.

(*See* Am. Compl. ¶ 28.)   Richter's Complaint was filed more than five years later on

November 16, 2012.  "Like many of the federal civil rights statutes, the ADA does not

contain its own statute of limitations," but "this Circuit has uniformly applied

Connecticut's three-year tort statute of limitations in other civil rights contexts" and does

_____

[6] Judicial immunity also extends to court personnel in the performance of administrative tasks, which are "judicial in nature and an integral part of the judicial process."  *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997).  To the extent that the Amended Complaint asserts claims against the Judicial Branch for its employees' role in carrying out Judge Barall's orders (*see* Am. Compl. ¶¶ 44–47, 62), these claims must also be dismissed on the basis of judicial immunity.  *See Isasi v. Heinemann*, No. 08cv5284 (BMC), 2009 WL 159601, at *2 (E.D.N.Y. Jan. 22, 2009) ("Court clerks have been granted absolute immunity where the judge was the ultimate decision maker and the clerk was just carrying out the orders of the judge.").

so as well with the ADA.  *Duprey v. Connecticut Dep't of Motor Vehicles*, 191 F.R.D. 329, 341 (D. Conn. 2000).

Likewise, Richter's claim for intentional infliction of emotional distress is also barred by the three-year statute of limitations.  *See* Conn. Gen. Stat. § 52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); *see also DeCorso v. Watchtower Bible & Tract Soc. of New York*, 46 Conn. Supp. 386, 395 (Super. Ct. 2000) ("[C]laim of intentional infliction of emotional distress is time barred by the three year statute of limitations.").

In her opposition, Richter asserts that the statute of limitations "does not apply," because Defendant's ADA violations "have caused ongoing injuries."  (Pl.'s Opp'n to OAM [Doc. # 42] at 3.)  "Federal law governs the question of when a federal claim accrues notwithstanding that a state statute of limitations is to be used."  *Morse v. Univ. of Vermont*, 973 F.2d 122, 125 (2d Cir. 1992).  "In analyzing the timing of accrual in the context of discrimination claims, the Supreme Court has instructed that 'the proper focus is on the time of the *discriminatory act,* not the point at which the *consequences* of the act become painful.'"  *Id.* (quoting *Chardon v. Fernandez,* 454 U.S. 6, 8 (1981)) (emphasis in original)).  Given that the discriminatory acts that Richter asserts against OAM occurred more than five years after she filed the Complaint, such claims are barred by the statute of limitations.

Even if Plaintiff's claim under Title III of the ADA were not barred by the statute of limitations, her claims would fail because she lacks standing.  "A private individual may only obtain injunctive relief for violations of a right granted under Title III; [s]he cannot recover damages."  *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 86 (2d Cir.

2004).  Accordingly, Plaintiff's claims for monetary damages must be dismissed on this basis as well.[7]

To the extent that Plaintiff seeks injunctive relief against OAM, she has not pleaded that she "plausibly intends to return to the place of discrimination," *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008), i.e., that she intends to seek the services of OAM again in the future, such that she would have standing to seek injunctive relief under the ADA.  Given that OAM sued Richter for unpaid fees and that Richter asserts that the firm provided "inadequate representation," (Am. Comp. ¶ 33–34), it is not plausible that Richter would against seek OAM's legal representation.  Accordingly, Richter's claims for injunctive relief must be dismissed on this basis as well.  *See Doe v. Deer Mountain Day Camp, Inc.*, 682 F. Supp. 2d 324, 340 n.32 (S.D.N.Y. 2010) ("Adam has failed to demonstrate a plausible intention or desire to return to [the business] but for barriers of access of which he is aware.  As such, Adam lacks standing to seek injunctive relief on his own behalf." (internal citations and quotation marks omitted)).

Even if Plaintiff's claim for intentional infliction of emotional distress were not barred by the statute of limitations, Plaintiff has failed to state a claim for relief because she has not alleged extreme and outrageous conduct.  To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3)

---

[7] Plaintiff alleges that OAM's "bullying and threatening . . . was a violation of the ADA prohibition against retaliation" (*id.*¶ 30) but does not plead any non-conclusory facts to support her assertion that OAM's denial of reasonable accommodations was retaliation for her having engaged in a protected activity.

that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Carrol v. Allstate Ins. Co.,* 262 Conn. 433, 443 (2003). Conduct is extreme and outrageous if it "go[es] beyond all possible bounds of decency, and [is] regarded as atrocious, and utterly intolerable in a civilized community." *Id.* "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine." *Appleton v. Bd. of Educ. of Town of Stonington,* 254 Conn. 205, 210 (2000). Plaintiff has not alleged any conduct beyond an ADA violation, which without more does not constitute "extreme and outrageous" behavior. *See Armstead v. Stop & Shop Companies, Inc.,* No. 3:01cv1489 (JBA), 2003 WL 1343245, at *5 (D. Conn. Mar. 17, 2003) ("Failure to accommodate plaintiff's disability . . . do[es] not rise to the level of exceeding all bounds usually tolerated by decent society.").

### G.    Plaintiff's Motion to Strike

Plaintiff has moved to strike [Doc. # 50] the State's memorandum in support and a number of exhibits submitted in support of its motion to dismiss on the basis that it contains material not relevant to her complaint and confidential documents that she submitted to the Judicial Branch in connection with her ADA requests.  The exhibits submitted by the State, however, such as pleadings from the state court actions and Plaintiff's requests for ADA accommodations are frequently referenced in the Amended Complaint and form the basis for her allegations.   "On a motion to dismiss, the court may consider 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Yak v. Bank Brussels Lambert,* 252 F.3d 127, 130 (2d Cir. 2001) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949

F.2d 42, 47 (2d Cir. 1991) (alterations in original).  Accordingly, Defendants were entitled

to submit such documents for the Court's consideration, and Plaintiff's motion to strike

is denied.[8]

## III.    Conclusion

For the reasons discussed above, Defendants' motions [Doc. ## 35, 45] to dismiss

are GRANTED, and Plaintiff's Motion [Doc. # 50] to Strike is DENIED.   The Clerk is

directed to close this case.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 27th day of March, 2014.

---

[8] Although there is a "a strong presumption of [public] access" to "judicial documents," *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006), to the extent that Plaintiff asserts that the exhibits contain "highly sensitive medical and psychiatric information," *Desmond v. Astrue*, 660 F. Supp. 2d 329, 335 (D. Conn. 2009), such as that contained in her ADA requests, the appropriate response is to submit a narrowly tailored motion to seal portions of these materials.  *See Crossman v. Astrue*, 714 F. Supp. 2d 284, 290 (D. Conn. 2009) ("[T]he Court will not permit a blanket order allowing Ms. Crossman to file every document under seal. . . . However, if Ms. Crossman can identify particular portions of individual documents that she believes should be shielded from public view, she may seek individual orders relating to those documents."). In order to do so, Plaintiff must make a separate motion in accordance with District of Connecticut Local Rule 5(e), specifying precisely what she wishes to be kept under seal and making a particularized showing of good cause as to why the Court should depart from the strong presumption against sealing any court records to public inspection.  *Id.*